_____ FILED      _____ ENTERED
_____ LODGED     _____ RECEIVED

MAR – 5 2024

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | **CRIMINAL NO.**  DKC-24-73 |
| **v.** | * | |
| | * | **(Conspiracy to Commit Bank Fraud, 18** |
| **THEODORE SAPPERSTEIN,** | * | **U.S.C. § 1349; Forfeiture, 18 U.S.C. §** |
| | * | **982(a)(2)(A) and (b)(1), and 21 U.S.C. §** |
| **Defendant.** | * | **853(p))** |
| | * | |
| | * | |

### INFORMATION

### COUNT ONE
### (Conspiracy to Commit Bank Fraud)

The United States Attorney for the District of Maryland charges that:

At all times relevant to this Information:

1.       Defendant **THEODORE SAPPERSTEIN** ("**SAPPERSTEIN**") was a resident of Baltimore County, Maryland.

2.       Defendant conducted business in Baltimore County, Maryland, including through Hayes Consulting, LLC.

### The Object of the Conspiracy

3.       Beginning in or about August 2020 and continuing through in or about August 2021, in the District of Maryland, and elsewhere, the defendant,

### THEODORE SAPPERSTEIN,

did knowingly and willfully conspire, combine, confederate, and agree with persons known and unknown to commit bank fraud, that is, to knowingly execute and attempt to execute a scheme to defraud financial institutions as to a material matter, and to obtain moneys, funds, credits, assets,

securities, and other property owned by or under the custody and control of the Financial Institutions by means of materially false and fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Section 1344.

<b><u>Manner and Means of the Conspiracy and Scheme to Defraud</u></b>

It was part of the scheme to defraud that:

4.      **SAPPERSTEIN** and his co-conspirators created and caused to be created fictitious and legal entities (each a "Shell Entity").

5.      **SAPPERSTEIN** and his co-conspirators opened and obtained the use of bank accounts for the Shell Entities (each a "Shell Entity Bank Account").

6.      Using purchased consumer-victim bank account information, **SAPPERSTEIN** and his co-conspirators caused debits to be originated against the consumer-victims' bank accounts (the "Consumer Bank Accounts"), including accounts that were held and serviced by federally insured financial institutions.   These debits were for the benefit of the Shell Entities, and were deposited to some of the Shell Entity Bank Accounts at "Originating Banks."   **SAPPERSTEIN** and his co-conspirators falsely represented that these debits were authorized by the prospective victims as payment for a service provided by a Shell Entity, when in truth and in fact, as **SAPPERSTEIN** and his co-conspirators then knew, the debits were not authorized.

7.      The debits against the Consumer Bank Accounts resulted in returned transactions (each a "return") affecting the Shell Entity Bank Accounts at Originating Banks, including transactions reported to Originating Banks as unauthorized.   **SAPPERSTEIN** and his coconspirators knew and believed that the Shell Entity's return rate, often caused and would have caused scrutiny from the Originating Banks.   For example, **SAPPERSTEIN** and his coconspirators knew and believed that, for Automated Clearing House ("ACH") debits, National

Automated Clearing House Association ("NACHA") rules imposed certain thresholds for acceptable return rates and certain obligations on Originating Banks to monitor return rates. **SAPPERSTEIN** and his coconspirators knew that high return rates could cause the Originating Banks to stop originating debits for the Shell Entities and therefore restrict the scheme's ability to further debit Consumer Bank Accounts.

8.      To conceal and continue their unauthorized debits against Consumer Bank Accounts and conceal their returns and return rates, and continue to collect the proceeds of the fraud, **SAPPERSTEIN** and his coconspirators took the following actions, among others:

a.      When a Consumer Bank, Originating Bank, or other person or entity requested proof of authorization ("POA") for a debit against a Consumer Bank Account, **SAPPERSTEIN** and his coconspirators provided false and fraudulent documentation to be presented to the requester, claiming that the consumer-victim had authorized the debit, as a payment to a Shell Entity for a subscription for a service provided by the Shell Entity, by signing up for the Shell Entity's service through the Shell Entity's website.

b.      **SAPPERSTEIN** and his coconspirators monitored the return rates, and, depending on the return rates of the unauthorized consumer-victim debits, **SAPPERSTEIN** and his coconspirators regularly caused Originating Banks to originate, for the Shell Entities, thousands of "micro" debits (also referred to as "affiliate" or "friendly" traffic, debits, or transactions) against Shell Entity Bank Accounts at other financial institutions, withdrawing a small amount of money with each debit.   Since **SAPPERSTEIN**'s co-conspirators controlled the Shell Entity Bank Accounts, **SAPPERSTEIN** and his co-conspirators knew these micro debits would not result in returns and would therefore artificially suppress the Shell Entity return rates at

Originating Banks to levels that, as **SAPPERSTEIN** and his co-conspirators understood and believed, would avoid Originating Banks' scrutiny and potential termination of banking services.

9.     After proceeds of unauthorized debits from the Consumer Bank Accounts were credited to Shell Entity Bank Accounts, **SAPPERSTEIN** caused some of the proceeds to be funneled to other Shell Entity Bank Accounts, and bank accounts used to fund micro debits used to conceal and disguise Shell Entity return rates and in order to promote and prolong their scheme.

18 U.S.C. § 1349

## **FORFEITURE ALLEGATION**

The United States Attorney for the District of Maryland further finds that:

1.      Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendant that, in the event of the defendant's conviction on Count One of this Information, the United States will seek forfeiture as a part of any sentence in accordance with 18 U.S.C. § 982(a)(2)(A), (b)(1), and 21 U.S.C. § 853(p).

### **Bank Fraud Forfeiture**

2.      Upon conviction of the offense alleged in Counts One of this Information, the defendant,

### **THEODORE SAPPERSTEIN,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting or is derived from proceeds obtained directly or indirectly, as the result of such offense.

### **Substitute Assets**

3.      If, as a result of any act or omission of the defendant, any of the property described above as being subject to forfeiture:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third person;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property that cannot be subdivided without difficulty;

the United States shall be entitled to forfeiture of substitute property up to the value of the forfeitable property described above pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

18 U.S.C. § 982(a)(2)(A), (b)(1)
21 U.S.C. § 853(p)

Date:  3/4/2024
_____

*Erek L. Barron / dlt*
_____
EREK L. BARRON
United States Attorney
District of Maryland

/s/
_____
AMANDA N. LISKAMM
Director
Consumer Protection Branch
U.S. Department of Justice